```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

TAYLOR RENEE WHISENANT, a
Putative Personal
Representative of The
Estate of Justin Emil
Mason, Deceased,

      Plaintiff,

v.                                   Case No:  2:20-cv-370-JES-NPM

WAYNE MICHAEL NELSON,

      Defendant.
```

## OPINION AND ORDER

This matter comes before the Court on plaintiff's Motion in Limine to Exclude Evidence and/or Argument Regarding Plaintiff Performing a Wheelie Prior to the Collision (Doc. #38) filed on September 7, 2021. Defendant filed a Response in Opposition (Doc. #49) on September 21, 2021.

Plaintiff seeks to exclude evidence and argument related to plaintiff's performance of a wheelie prior to the accident because "there is absolutely no evidence in the record to demonstrate that the decedent was doing a wheelie at the time of the collision." (Doc. #38, pp. 1-2.) Defendant opposes the motion because it is undisputed that Deborah Triantafel was the closest witness to the scene, and no other motorcycles passed by her from the time she

saw the wheelie until she came upon the collision.  (Doc. #49, p. 2.)

"Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." Powers v. Target Corp., No. 19-CV-60922, 2020 WL 1986968, at *2 (S.D. Fla. Apr. 27, 2020) (citations omitted).

The parties agree that the only key lay witness to a wheelie was Deborah Triantafel who testified that she did not see the actual collision and arrived after the collision.  (Doc. #26-2, 15:18-24.)

> A. I arrived after the collision.  But I saw him as I was sitting at the light heading north on his bike.
>
> Q. Okay. And when he was heading north on his bike, what was he doing?
>
> A. I guess they call it wheelies when the bike – it goes up in the air.  And I looked at my

mother, and we were probably chatting. As you can see, I have kind of a gift of gab. And I see said, Gee, Mom. I've never seen any of the kids go that high on the bike. My gosh.

. . .

Q. Okay. So the very first time you saw him, he was actively doing a wheelie?

A. The very first time, correct.

Q. Okay. Did you ever see him put his bike down and stop doing the wheelie?

A. Now, that is a little sketchy in my mind, but I don't believe so. I don't believe so. For the best of my recollection.

Q. Did you continue to see the motorcyclist up until the point of impact?

A. One more time, Amanda.

Q. I think you said you did not see the collision; is that correct?

A. Correct. Did not see it.

Q. Okay. Was the – did you pull out of the intersection before the accident?

A. Correct, yes, yes.

Q. Okay. All right. So let me -- let me tell you what I want to know, and then you can describe it for us, okay. What I want to know is [ ] did the motorcycle travel out of your sight, and then you came upon the accident –

A. Exactly.

Q. -- or did you continuously see him do a wheelie?

A. No.

    MR. SWIFT: Object to the form.

BY MS. DOWNING:

Q. You can go ahead.

A. I came upon it.

Q. Okay. When you saw him do the wheelie, was he completely across the street from your -- if you're looking dead across the street to the northbound lanes where you went ahead, is that the first time you saw him, or did you see him to your right? Or you tell me where was he positioned in your view range when you first saw him.

A. He was -- he was, I believe, in the right lane heading north, and he -- my light was red, his was green. So I caught him as he went right by me.

. . .

Q. Okay. Did your eye vision follow him as he headed north?

A. Not for long because I just -- he went out of my sight at that point; and I was, as I say, talking with my mother. And it happened so fast. I don't know how fast he was traveling but, you know.

Q. Can you give your best estimate as to how long you continued watching him.

A. I would say under a minute.

. . .

Q. Did you, as you pull out onto 41, were you still watching him?

A. No, no. He must have been out of my sight. And then before I know it, he's flagging me down. The gentleman in the truck pulled over to the right side of the road and –

. . .

- 4 -

> Q. Okay. Once you're heading north on 41, right at that second, right when you're heading north on 41, are you able to see the accident?
>
> A. No.
>
> Q. Okay. So you travel for a little bit; is that accurate?
>
> A. Yes.
>
> Q. Okay. Do you know how long you traveled, whether in time or distance, before you realized there was an accident?
>
> A. Oh, my gosh. It was under five minutes. It was just like maybe three or four minutes, and then the fellow was before I know it, the fellow was flagging me down. And I went around the poor boy as I saw him on the ground in my lane.

(Id., 15:24-16:7; 16:14-17:25; 18:10-18:18; 19:7-12; 20:16-21:5.) Ms. Triantafel could not remember what the affidavit she signed stated, but she had a recent diagnosis of cancer and noted that her memory may be going. (Id., 32:17-25.) The Affidavit of Deborah Triantafel states that "As I waited to turn left, a "race bike" type of motorcycle drove past me on US-41 North, and it was doing a wheelie. I noticed the motorcycle because the wheelie it was doing was very high. The motorcycle continued doing the wheelie as it went past me and for as long as I saw it." Triantafel swore that "the same motorcycle that had just driven past me doing a wheelie was lying on the ground." (Doc. #27-1.)

Jennifer Neel Chase was behind Justin Mason and she watched him travel North on U.S. 41. She states that "[a]t no time while

Justin Mason was in [her] vision did he perform a wheelie." After briefly losing sight of Mason, she arrived at the scene of the accident. (Doc. #26-3.) The Pretrial Stipulation identifies David Lee Musick as also having observed Mason performing a wheelie further south through the intersection. (Doc. #44, p. 3.)

Michael Reed, a Trooper with the Florida Highway Patrol, testified as to the factors that led him to believe that Justin Emil Mason, the individual on the motorcycle, was not doing a wheelie at the time of impact,

> Certainly. So the first thing, if the motorcycle was in an active wheelie at the time of impact, the damage profile would have been to the bottom or frame area of the motorcycle, which there was no damage to the bottom.
>
> Also, the front of the motorcycle was crushed in.
>
> You can also see in the rear of the truck, the bumper area, the outline shape of the rim where it connected with the vehicle.
>
> Those factors tell me that the motorcycle was vertical and upright and going straight in or at an angle to the back of the truck at the time of the collision, not in a wheelie.

(Doc. #26-1, 172:25-173:1-13.) Plaintiff relied on Trooper Reed's testimony in opposition to summary judgment. (Doc. #35.) When asked to speculate if his evaluation would change with additional information, Trooper Reed responded:

> Q If a witness observed Mr. Mason doing a wheelie through that intersection of Hancock

>     until his motorcycle went out of their site
>     northbound, would that change your evaluation?
>
>     A   It would, yes.
>
>     Q   All right.
>
>     A   That would be the closest witness to the
>     crash.

(Id., Tr. 153:11-19.)   No specific facts were included with the hypothetical question.

Kevin Breen, the Managing Principal and Director of Marine and Automotive Research for Engineering Systems, Inc. (ESI), submitted an Affidavit (Doc. #22-3) on behalf of defendant Wayne Michael Nelson, the other driver.  The statement that "Mason was operating his motorcycle doing a wheelie, which is a stunt maneuver" implies that Breen concluded that Mason was doing a wheelie.   The Preliminary Investigative Report (Doc. #36-1) submitted by Breen found that the wheelie occurred prior to the crash based on the testimony Triantafel: "In this crash scenario, the evidence includes the observation that at some point leading to the crash Mason was operating his vehicle doing a wheelie." (Id., p. 8.)   "Prior to the crash, Justin Mason was operating his motorcycle in a manner characterized as a 'wheelie.'"   (Id., p. 9.)

Even though Breen noted the 'stunt maneuver', the conclusion was that it was not in the wheelie position at the point of impact.

>     In this situation, Mason operating the vehicle
>     doing a wheelie is a stunt maneuver. This

- 7 -

> maneuver reduces the ability of the motorcyclist to control the motorcycle and see down the road to address hazards. It also significantly reduces the effects of the vehicle lighting system as seen by other motorist. The wheelie maneuver being executed by Mason significant reduced if not eliminated the opportunity for motorist such as Nelson to perceive Mason's motorcycle presence while the motorcycle's front tire is in the air.
>
> . . . .
>
> The damage pattern indicates that at the time of the crash that Nelson had completed a U-turn and was essentially aligned parallel to the travel lanes in the center lane. Given the geometry of the intersection and turning characteristics of a full-sized truck such as Nelson's Ram pickup, he would likely have needed to move past the center turn lane to complete the turn into the right lane. The damage pattern also indicates that the Mason's Yamaha motorcycle was oriented such that the front wheel was on the pavement and not in a wheelie position at the point of impact.

(Id., pp. 7, 9.)

The fact of the wheelie just prior to the accident, possibly 3 to 4 minutes before but not at the time of the accident, is highly prejudicial and would likely confuse the issue of the cause of the accident. The Court finds that its probative value is far outweighed by the prejudice. However, this ruling is fluid and subject to what may occur at trial.

> The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound

>       judicial discretion, to alter a previous *in
>       limine* ruling.

Luce v. United States, 469 U.S. 38, 41-42 (1984).  Counsel will require prior approval to broach the subject if the door is opened.

Accordingly, it is hereby

**ORDERED**:

Plaintiff's Motion in Limine to Exclude Evidence and/or Argument Regarding Plaintiff Performing a Wheelie Prior to the Collision (Doc. #38) is **GRANTED**.

**DONE and ORDERED** at Fort Myers, Florida, this __22nd__ day of September 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record